## Richmond

BARNEY L. BYRUM, ET AL. v. BOARD OF SUPERVISORS OF ORANGE
COUNTY, ET AL.

June 11, 1976.

Record No. 750484.

Present, All the Justices.

*John C. Lowe (Hartwell H. Gary, III; Lowe and Gordon, Ltd.,* on brief), for appellants.

*Ulysses P. Joyner, Jr. (George H. Davis, Jr.; Somerville, Moore & Joyner,* on briefs), for appellees.

HARRISON, J., delivered the opinion of the court.

This appeal by Barney L. Byrum and Elizabeth Byrum involves certain provisions of the Orange County zoning ordinance. Appellants claim that the Board of Supervisors of the county was with-

out authority to deny them a conditional use permit for a mobile home park on their property. They further say that, assuming the ordinance does give such authority, it fails to provide any standards for judging whether a permit should be denied, and is therefore invalid and ineffectual as to them.

In 1968 Orange County adopted its zoning ordinance in accordance with the provisions of Virginia Code §§ 15.1-486 through 15.1-498. In its preamble the ordinance states that its adoption is "for the purpose of promoting health, safety, order, prosperity, the conservation of natural and historic resources, and the general welfare requiring it. . . ." The county was divided into six districts (or zoning classifications), namely, agricultural, residential limited, residential general, light commercial, general commercial, and industrial. Appellants' property was zoned "Agricultural District A", as was more than 90% of the total land area of the county.

The ordinance in § 2-1 provides that in Agricultural District A any buildings to be erected or land to be used should be for one or more of the uses listed in thirteen enumerated categories.

Section 2-1-4 of the ordinance names mobile home or trailer parks among thirteen uses that "may be permitted" in Agricultural District A upon the issuance of a conditional use permit by the Board of Supervisors.

Section 9-3-1 of the ordinance recites the permitted uses and provides that permits shall be subject to such conditions as the governing body deems necessary to carry out the intent of the ordinance. Section 9-3-2 provides guidelines to be used by the governing body in imposing conditions.[1]

While the Board has the right under § 2-1-14 of the ordinance to delegate to a Zoning Administrator its authority to issue use permits, and the right under § 9-3-1 of the ordinance to delegate to the Board

---

[1] "In determining conditions to be imposed, the governing body shall take into consideration the intent of this ordinance and may impose reasonable conditions that:

(a) Abate or restrict noise, smoke, dust, or other elements that may affect surrounding property;

(b) Establish setback, side, and front yard requirements necessary for orderly expansion and to prevent traffic congestion;

(c) Provide for adequate parking and ingress and egress to public streets or roads;

(d) Provide adjoining property with a buffer or shield from view of the proposed use if such use is considered to be detrimental to adjoining property;

(e) Tend to prevent such use from changing the character and established pattern of development of the community."

of Zoning Appeals its authority to set conditions, the Board has never delegated its authority in these matters.

Byrum agrees that the ordinance gives to the Board the power to grant conditional use permits and to impose reasonable conditions, but argues that it does not give to the Board the power to deny a property owner a conditional use permit for a use permitted by § 2-1-14 of the ordinance.

There are certain general principles involved in zoning cases which we have too often stated to require extensive review. The governing body of a county in Virginia is authorized by statute to enact local zoning ordinances. Code § 15.1-486. Such a body is empowered to reserve unto itself the right to issue special exceptions or use permits. Code § 15.1-491(c). Zoning is a legislative power vested in the Commonwealth and delegated by it, in turn, to various local governments for the enactment of local zoning ordinances. The constitutionality of such ordinances is no longer questioned. Zoning ordinances must not be arbitrary and unreasonable, but if their reasonableness is fairly debatable they must be sustained. Local governing bodies, because of their knowledge of local conditions and the needs of their individual communities, are allowed wide discretion in the enactment and amendment of zoning ordinances. A court should not substitute its judgment for that of the local legislative body unless there has been a clear abuse of power.

In *Maritime Union* v. *City of Norfolk*, 202 Va. 672, 680-81, 119 S.E.2d 307, 313 (1961), we said:

> "The courts, in passing on zoning ordinances, have firmly established the rule that where such ordinances grant discretionary power for their administration, there must be provided standards for the guidance of the administering authority. The rule is founded on the principle that there must be a uniform application of the regulations, so that the discretion vested by the ordinance will not be used arbitrarily, and so that the benefits of the discretion will not be bestowed on some and denied to others under like circumstances. [Citing cases]"

However, in the same case, we recognized a well-established exception to the rule just stated and quoted from *Gorieb* v. *Fox, et als.*, 145 Va. 554, 563-564, 134 S.E. 914, 917 (1926), *aff'd* 274 U.S. 603 (1927), where it was said:

> "While the courts have held that, generally speaking, statutes and ordinances which vest arbitrary discretion in public officials, with-

out prescribing a uniform rule of action by which they shall be guided are unconstitutional and void, this rule is subject to a qualification, 'where it is difficult or impracticable to lay down a definite rule, or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare'." 202 Va. at 681, 119 S.E. at 313.

In *Civic Assoc.* v. *Chesterfield County*, 215 Va. 399, 209 S.E.2d 925 (1974), this Court specifically recognized that when a legislative body reserves to itself the power to grant a use permit, its action on an application is a legislative function.

In *City of Richmond* v. *Randall*, 215 Va. 506, 511, 513-14, 211 S.E.2d 56, 60, 61-62 (1975), we said:

> "The presumption of legislative validity attaches not only to zoning ordinances adopted by legislative bodies, but also to actions on applications for special use permits where legislative bodies are empowered by law to take such actions.[2] And here, too, the linchpin of the presumption is reasonableness. When a landowner whose special use permit has been denied shows that the existing zoning ordinance, as applied to his land, is invalid, and that the use he requested is reasonable, he has made a *prima facie* showing that the legislative action denying his permit was unreasonable. . . ."

> "[2] 'The exercise of such power [to grant special use permits] is one in which the legislative body exercises judgment or discretion which is reviewable as to reasonableness, *i.e.*, whether there has been illegality, arbitrariness or an abuse of discretion.' 2 A. Rathkopf, *The Law of Zoning and Planning* 63-7 (1972)."

Counsel for appellants cites our decision and language in *City of Winchester* v. *Glover*, 199 Va. 70, 97 S.E.2d 661 (1957). In that case Glover was denied a permit to operate a gasoline service station under the provisions of an ordinance which authorized the city council to refuse to grant a permit if "the public safety would be endangered by the filling station. . .". On review we held that the operation of such a station was not an inherently dangerous business and that the council was attempting to exercise administrative powers under an ordinance which set forth no standards or rules of guidance. However, we further observed that, while "a city council is empowered both to legislate and administrate, . . . in passing upon the permit . . . in question it was acting solely in an administrative capacity". 199 Va. at 72, 97 S.E.2d at 663.

Reaffirming the reasons underlying our decisions in *Maritime Union* v. *City of Norfolk, supra, Civic Assoc.* v. *Chesterfield County, supra,* and *City of Richmond* v. *Randall, supra,* we again say that when the governing body of a county reserves unto itself the right to issue special exceptions or use permits, the issuance of such permits is a legislative function. To the extent that *Glover* is in conflict with these decisions and our holding in the case under review, *Glover* is expressly overruled.

In the Orange County ordinance now under consideration, provision is made in the article dealing with Agricultural District A for two use categories: *authorized* uses and uses which *may be permitted* upon the issuance of a conditional use permit. These permissible uses include not only mobile home or trailer parks, but also such diverse uses as hog farms, kennels, cemeteries, refuse disposal sites, etc.

We attach significance to the use of the word "may" in § 2-1-14 of the ordinance rather than "shall" as used in § 2-1. While "courts not infrequently construe 'may' as 'shall' or 'must' to the end that justice may not be the slave of grammar . . .", *Black's Law Dictionary,* 4th Ed., p. 1131, such a construction is not indicated in the instant case. We think it clear that the use of "may" indicates an intent by the Board to reserve to itself a large measure of discretion as to whether a conditional use permit should be granted. Obviously some of the uses which "may be permitted" would be wholly incompatible with either *authorized* uses, or other uses *permitted* upon condition. If appellants' argument is accepted, a landowner could sell one parcel of his farm for a girls' summer camp, another parcel for a church and the parcel in between for use as a hog farm or a refuse disposal site. It is not a sufficient answer to say that once a use permit is granted, the Board could impose regulations and conditions upon that use, for the Board can only establish reasonable and fair regulations for the operation of the permitted activity. It cannot deny the permit indirectly by imposing unreasonable and impossible conditions on its use. No matter how reasonably a hog farm is administered, its very nature is going to make it incompatible with many other uses.

It is our conclusion that the Orange County Board had the specific right in the exercise of its legislative discretion to refuse to grant a use permit to appellants. This is not an unbridled discretion, for the courts are vested with authority to provide protection against arbitrary, capricious or unreasonable action by a board. Here the trial court found that the Board had not acted arbitrarily or capri-

ciously in enacting and interpreting the zoning ordinance of the county, and this holding is not challenged.

Neither do we agree with the position taken by appellants that the Board of Supervisors of Orange County is wholly without standards to guide it in the granting or denying of use permits. Had the Board delegated to an administrator or an administrative agency the power to issue or to deny conditional use permits the law would have required adequate guidelines and standards. A determination of the right of an individual under the ordinance cannot be left to the will or unregulated discretion of subordinate officers or boards. *Andrews v. Board of Supervisors*, 200 Va. 637, 639, 107 S.E.2d 445, 447 (1959). However, in Orange County the legislative body, its Board of Supervisors, exercises the statutory authority that it has expressly reserved unto itself to grant or to deny use permits and to impose conditions where a permit is granted. The Board is the same body that would determine and promulgate the guidelines and standards that would be necessary if the authority to issue use permits were delegated to an administrative agency.

In *Gorieb* v. *Fox, et als., supra,* the Court recognized that it is difficult to define the extent to which the police power of the state may be conferred upon localities, but that "it is elastic and expands automatically to protect the public against the improper use of private property to the injury of the public interest. It must never be exercised except in a reasonable manner and for the welfare of the public." 145 Va. at 561, 134 S. E. at 916.

In the instant case the Orange County Board of Supervisors is not only prohibited from acting in an unreasonable, arbitrary or capricious manner, but it is also controlled by those provisions of the Code of Virginia which authorize it to enact and administer zoning ordinances. These sections are replete with provisions outlining the purpose of zoning ordinances and matters to be considered in enacting and administering them. Further, the Orange zoning ordinance expressly proclaims that its purpose is to promote health, safety, order, prosperity, the conservation of natural and historic resources and the general welfare.

The ordinance clearly sets forth in its statement of intent the objective which it seeks to accomplish by zoning as Agricultural District A a large percentage of the land in Orange County. The district was designed and intended "primarily to accommodate farming and kindred rural occupations". The ordinance states that while this is the basic aim, the uses permitted are broad enough to allow

development of low density residential areas. While recognizing this to be a logical and expected development, the ordinance expresses an intent to discourage the "random scattering of residential, commercial, or industrial uses in this type of district".

In *Maritime Union* it was contended that the City Council of Norfolk was without standards to govern it in granting or denying use permits under a certain city ordinance. Involved there was an application for a use permit for a union hiring hall. The disputed section of the pertinent ordinance provided that a use permit be issued if the City Council should find that the use would not adversely affect the health or safety of persons residing or working in the neighborhood of the proposed use; would not be detrimental to the public welfare or injurious to property or improvements in the neighborhood; and would be in accord with the purposes of the ordinance and the city plan of Norfolk. After commenting on the involvements and considerations incident to the issuance of use permits, and the necessity that some requirements be imposed upon certain uses that are not imposed upon others, we said:

"From the whole ordinance, we find that the City Council of Norfolk has declared a legislative policy to be followed, has established primary standards for carrying out such policy, has prescribed a clear-cut principle to which it must conform with appropriate regard for the public interest, and has set out a clear and definite procedure to be followed in acting on applications for use permits. The ordinance makes it mandatory upon City Council to issue the requested use permit if the standards prescribed have been met. Under those circumstances, there has been provided sufficient protection against an arbitrary and uncontrolled exercise of discretion, and the challenge to the validity of the standards has, therefore, been met." 202 Va. at 682, 119 S. E. 2d at 314.

The fact that approximately 90% of Orange County has been zoned agricultural indicates that the county is still primarily a rural area. However, Orange County, not unlike numerous other counties in Virginia, is experiencing growth and the problems that attend such growth. In 1968 the Board determined that the welfare of its citizens required the enactment of a zoning ordinance. At that time the Board could not have anticipated the extent of the growth of the county, the type of growth or the direction which it would take. It was therefore impossible for the county to have zoned with the specificity that may ultimately become necessary. It can be said here

of the Orange Board, as it was said in *Maritime Union* of the City Council of Norfolk, that "it would have been impracticable, if not altogether impossible, . . . to have provided a set of standards any more definite than those found in the ordinance under review". 202 Va. at 683, 119 S. E. 2d at 314.

The classification of land uses in Agricultural District A between authorized uses and permitted uses was one manifestation of the difficulty the Board faced and the problems incident to laying down more definite rules for the use of the land in the district.

We decide that the statutes and the zoning ordinance involved here contain sufficient guidelines to enable the governing body of Orange County to exercise effectively its legislative function of granting or denying use permits under the ordinance. This function relates to the Board's exercise of its police powers, and is deemed necessary to protect the public's morals, health, safety and general welfare.

For the reasons stated the decree appealed from is

*Affirmed.*