Present: All the Justices

SUGARLAND RUN HOMEOWNERS
ASSOCIATION

Record No. 992331   OPINION BY JUSTICE CYNTHIA D. KINSER
                                    September 15, 2000
WALTER D. HALFMANN, ETC., ET AL.

          FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
               Jean Harrison Clements, Judge


     In this wrongful death case, the dispositive issue is

one of proximate cause.  We review a judgment entered

against a homeowners' association in favor of the personal

representatives of the estate of a child who was struck and

killed by a motorist as the child was riding his bicycle

from a pathway located in the common areas owned by the

homeowners' association onto a public street.  Because we

conclude that there was insufficient evidence as a matter

of law to establish that any alleged defects in the pathway

and its intersection with the street proximately caused the

accident, we will reverse the judgment of the circuit court

and enter final judgment for the homeowners' association.

                   FACTS AND PROCEEDINGS

     Walter R. Halfmann (Halfmann) was killed in January

1995 as he rode his bicycle from a multi-purpose, private

pathway[1] onto Sugarland Run Drive, a public street in Loudoun County, and was struck by a motor vehicle driven by Trina Kabiri. The bike path was located in a residential subdivision and was part of the common areas owned by Sugarland Run Homeowners Association, Inc. (Association).

Halfmann's parents, Walter D. Halfmann and Barbara B. Halfmann, as personal representatives of their eight-year-old son's estate, filed this action against Kabiri, the Association, and several other defendants.[2] The personal representatives alleged that the Association had notice or knowledge of "the unreasonably dangerous condition" existing at the intersection between the pathway and the street where the accident occurred, and that the Association failed to take "reasonable and necessary" steps to ensure that people utilizing the common areas could do so safely.

After the personal representatives presented evidence at trial, the Association moved to strike that evidence because, inter alia, the alleged defects in the pathway were not a proximate cause of the accident. The circuit

---

[1] Bicyclists, pedestrians, in-line skaters and skateboarders used the paved path.

[2] At the time of trial, only Kabiri and the Association remained as party defendants.

2

court denied the motion initially and again when the Association renewed its motion to strike at the conclusion of all the evidence.

A jury then returned a verdict against the Association in favor of the personal representatives and awarded damages to Halfmann's estate and his statutory beneficiaries pursuant to Code §§ 8.01-52 and -53. The jury, however, found in favor of Kabiri.[3] After denying the Association's motion to set aside the jury verdict, the circuit court entered judgment for the personal representatives.[4] This appeal followed.

The bike path at issue in this case was designed and constructed no later than the summer of 1974, but not by the Association. The path intersects Sugarland Run Drive and continues on the opposite side of the street. No signs or markings were placed along the pathway or on Sugarland Run Drive to warn a bicyclist or a motorist about the intersection. Nor were any barriers or devices installed at the end of the path to prevent or impede a bicyclist's

---

[3] The personal representatives did not appeal the judgment in favor of Kabiri, and she is not a party to this appeal.

[4] The circuit court's judgment was in accordance with the jury verdict except that the court remitted a portion of the jury's award for funeral expenses and for the care,

travelling from the path onto Sugarland Run Drive.  The only change to the pathway since its construction was the installation of curb cuts, or wheelchair ramps, on both sides of Sugarland Run Drive.  The Virginia Department of Transportation constructed the curb cuts in approximately 1994.

On the afternoon of the accident, as Halfmann was riding his bicycle down the descending pathway and approaching the intersection with Sugarland Run Drive, the intersection and street were clearly visible to him.  However, several objects were on his left side between the path and that portion of the street where Kabiri was operating her vehicle.  Two large, electrical switch/transformer boxes were located within a few feet of the edge of the pathway and approximately 10 to 15 feet from the edge of Sugarland Run Drive.[5]  Two vehicles were parked on the side of the street nearest Halfmann about 30 to 40 feet down Sugarland Run Drive.  A house was likewise located about 70 feet down the street from the point of impact between Halfmann's bicycle and Kabiri's car.  Bushes had been planted along one side of the driveway of that

_____

treatment, and hospitalization of Halfmann.  The personal representatives did not object to the remittitur.

house.  All these objects, as well as the pathway upon which Halfmann was riding his bicycle, were to Kabiri's right as she drove her vehicle along Sugarland Run Drive.

While no testimony established Halfmann's speed as he rode his bicycle on the path toward Sugarland Run Drive, Rachel Susan Toepfer, who was driving along Sugarland Run Drive in the direction opposite to that in which Kabiri was travelling at the time of the accident, testified that Halfmann's speed did not change as he approached the intersection, nor did he stop or look to his left in the direction of Kabiri's vehicle.  According to Toepfer, Halfmann entered the street and almost travelled past Kabiri's vehicle before the left front of her vehicle (the driver's side) struck the rear wheel of his bicycle. Another witness to the accident likewise testified that Halfmann did not stop at the intersection and did not appear to look to his left, the direction from which Kabiri's vehicle was approaching.

When the accident occurred, Kabiri was on her way to pick up her child from school.  Kabiri testified that Halfmann passed in front of her car and that she could not do anything to avoid hitting his bicycle.  She further

---

[5] The switch/transformer boxes were in place before the pathway was constructed.

stated that, if she had seen him, she would have stopped but she was not aware of anything in the street until the impact occurred.[6]  However, she knew that children who attended the nearby school often walked or rode bicycles to that school.

Jennifer L. Toole, an expert in the field of bicycle and pedestrian planning, testified that there were two major "flaws" in the design of the pathway and the intersection where the accident at issue occurred.  First, she stated that there should have been a sign inscribed with the warning "Bike Crossing" or "Pedestrian Crossing" on Sugarland Run Drive at its intersection with the pathway.  She also recommended that a crosswalk be painted on the street.

The second defect, according to Toole, was the inadequacy of "sight lines" between an approaching motorist and a bicyclist on the pathway.[7]  Toole identified the

---

[6] The investigating police officer testified that he found no skid marks on Sugarland Run Drive that would indicate Kabiri applied her brakes before the impact. Likewise, the officer did not find any indication on the bike path that Halfmann braked or slowed before entering the street.

[7] Toole testified that "appropriate sight lines" provide an "adequate visual distance" for a motorist to see a pedestrian and stop in time to avoid hitting the pedestrian, based on the speed limit or the prevailing

switch/transformer boxes as the factor that significantly blocked the sight lines for Halfmann and Kabiri on the day of the accident. However, Toole admitted that, in order to analyze whether sight lines are adequate, the respective likely speeds of a motorist and bicyclist must be determined. Toole further testified that only by removing the switch/transformer boxes could proper sight lines have been established. If the pathway itself were moved further from the boxes, Toole could say only that the sight lines would have been "better" since she had not analyzed that possibility.

Toole also stated that the pathway's downward slope to the intersection caused both motorists and bicyclists to have only a "narrow window" of visibility in which to see each other as they approached the intersection. Toole indicated that the pathway should have had only a grade of five to eight degrees, but instead, it sloped between 10 and 15 degrees. Nevertheless, she testified that if Halfmann had stopped at the intersection, he would have had a clear line of sight down Sugarland Run Drive in the direction from which Kabiri was travelling for "quite a distance." Finally, Toole stated that the location of the

_____

speed of motorists on the road. The term also applies when a bicyclist is approaching an intersection with a road.

curb cut was not appropriate because it did not exit into a crosswalk.[8]

ANALYSIS

Several principles guide our analysis of this case. On appeal, we review the facts in the light most favorable to the prevailing party at trial, in this case the personal representatives of Halfmann's estate. Nationwide Mut. Ins. Co. v. St. John, 259 Va. 71, 76, 524 S.E.2d 649, 651 (2000). "[A] party who comes before us with a jury verdict approved by the trial court 'occupies the most favored position known to the law.' " Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992) (quoting Pugsley v. Privette, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980)). A trial court's judgment is presumed to be correct, and on appeal, we will not set it aside unless the judgment is plainly wrong or not supported by the evidence. Ravenwood, 244 Va. at 57, 419 S.E.2d at 630. However, when these principles are applied, if it appears that the judgment is plainly wrong or without evidence to support it, we must set it aside. Evaluation Research Corp. v.

---

[8] The curb cut was not directly in front of Halfmann as he rode down the path. Instead, the curb cut was located to the side of the path, thus requiring Halfmann to make a turn to his left followed by another similar turn to his right in order to access the curb cut and Sugarland Run Drive from the path.

Alequin, 247 Va. 143, 147-48, 439 S.E.2d 387, 390 (1994) (citing Thompson v. Bacon, 245 Va. 107, 111, 425 S.E.2d 512, 514 (1993); Whichard v. Nee, 194 Va. 83, 89, 72 S.E.2d 365, 369 (1952)).

The dispositive issue in this appeal is whether the alleged defects in the design of the pathway and its intersection with Sugarland Run Drive were a proximate cause of the accident. In order to hold the Association liable for that alleged "unreasonably dangerous condition," the evidence must establish that such condition was a proximate cause of the accident. See Cannon v. Clarke, 209 Va. 708, 711, 167 S.E.2d 352, 354 (1969) (to hold owner liable for injuries sustained because of alleged unsafe condition of premises, it must be shown that such condition was a proximate cause of injuries). The personal representatives had the burden of proving not only that the Association was negligent but also that its negligence was a proximate cause of the accident. Commercial Distributors, Inc. v. Blankenship, 240 Va. 382, 395, 397 S.E.2d 840, 847 (1990) (citing State-Planters Bank & Trust Co. v. Gans, 172 Va. 76, 81, 200 S.E. 591, 593 (1939)); Boyd v. Brown, 192 Va. 702, 711, 66 S.E.2d 559, 564 (1951).

A proximate cause of an event is that "act or omission which, in natural and continuous sequence, unbroken by an

efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970); accord Jenkins v. Payne, 251 Va. 122, 128, 465 S.E.2d 795, 799 (1996); Banks v. City of Richmond, 232 Va. 130, 135, 348 S.E.2d 280, 282 (1986). Generally, the issue of proximate causation is a question of fact to be resolved by a jury. Jenkins, 251 Va. at 128, 465 S.E.2d at 799 (citing Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985)). However, when reasonable people cannot differ, the issue becomes a question of law for the court to decide. Jenkins, 251 Va. at 128, 465 S.E.2d at 799 (citing Hadeed v. Medic-24, Ltd., 237 Va. 277, 285, 377 S.E.2d 589, 593 (1989)); Alexander v. Moore, 205 Va. 870, 875, 140 S.E.2d 645, 648-49 (1965).

With regard to the issue of proximate cause, the Association argues that, while the personal representatives' expert, Toole, identified several alleged "flaws" in the design of the pathway and its intersection with Sugarland Run Drive, she never explained the causal connection between those particular defects and the accident at issue. To the contrary, the Association points out several facts that show that those defects were not a proximate cause of the accident. First, Toepfer, who

10

witnessed the accident, stated that Halfmann never altered the speed of his bicycle as he approached the intersection, and neither stopped at the intersection nor looked to his left for oncoming traffic.  Second, the intersection and the street were visible to anyone travelling on the pathway toward Sugarland Run Drive.  Finally, Toole admitted that if Halfmann had stopped at the intersection, he could have seen Kabiri's oncoming vehicle.

The personal representatives respond that there was "far more than a sufficient basis to show a causal connection" between the defects in the pathway and the accident.  They point to the inadequate sight lines between motorists on Sugarland Run Drive and bicyclists on the pathway, the excessive slope of the path, the lack of warning signs or a crosswalk, the absence of any barrier on the pathway to stop or slow a bicyclist, and the improperly located curb cut.  The personal representatives also contend that the question of proximate cause is actually an issue of contributory negligence, and argue that the jury found that Halfmann was not contributorily negligent when it returned a verdict against the Association.[9]  We agree with the Association.

---

[9] Since Halfmann was eight years old at the time of the accident, the circuit court instructed the jury that

11

Assuming, without deciding, that there was an unreasonably dangerous condition at the intersection between the pathway and Sugarland Run Drive, and that the Association knew or should have known of that condition, the burden of proving proximate causation remained with the personal representatives.  In this case, the evidence did not establish that the "flaws" identified by Toole were an "omission which, in natural and continuous sequence, . . . produce[d] the [accident], and without which [the accident] would not have occurred."  Beale, 210 Va. at 522, 171

_____

Halfmann was presumed to be incapable of contributory negligence but that the presumption could be rebutted.  The court further instructed the jury to find its verdict for either defendant if it concluded, as to that defendant, the personal representatives failed to prove either negligence or proximate cause, or if it found that Halfmann was contributorily negligent and that such contributory negligence was a proximate cause of Halfmann's death.

Although the personal representatives contend that the jury verdict in favor of the Association established that Halfmann was not contributorily negligent, under the instructions given, the jury could have found either that Halfmann was not capable of being contributorily negligent or that he was not contributorily negligent in this instance.  The verdict form was a general form that simply stated that the jury found in favor of the personal representatives and against the Association.  Thus, we reject the contention that the jury necessarily decided that Halfmann was not contributorily negligent.  Furthermore, an analysis of the question whether a tortfeasor's primary negligence proximately caused an accident and, if so, the consequent question whether a victim was contributorily negligent often involves review of the same or overlapping evidence.  That the evidence is the same or overlapping does not obviate the necessity of an independent examination of each question.

12

S.E.2d at 853.  We reach this conclusion because of the particular facts of the accident at issue.  <u>See</u> <u>Banks</u>, 232 Va. at 135, 348 S.E.2d at 283 (in applying rules of proximate cause, each case must be decided upon its own set of facts).

First, there is no evidence that Halfmann attempted to stop at the intersection and could not do so because of the grade of the path, the absence of a barrier or device to slow his speed, or the location of the curb cut.  In fact, according to Toepfer, Halfmann did not alter his speed, never stopped, and did not even look to his left for oncoming vehicles as he approached the intersection.  Next, the evidence was uncontradicted that Sugarland Run Drive and the intersection were clearly visible to Halfmann as he proceeded along the pathway toward the street.  Finally, Toole admitted that a determination regarding adequate sight lines depends on the respective speeds of a motorist and bicyclist, but the evidence did not demonstrate either Halfmann's speed or that of Kabiri.[10]

However, the evidence did establish that if Halfmann had stopped at the intersection of Sugarland Run Drive and

---

[10] The speed limit on Sugarland Run Drive was 30 miles per hour, and the record contained no evidence that Kabiri was speeding.

13

the pathway, he could have seen Kabiri's car approaching that intersection. This case is not one where Halfmann had to ride his bicycle into the edge of Sugarland Run Drive and look around the switch/transformer boxes in order to determine whether any vehicle was approaching from his left. Those boxes were 10 to 15 feet back from the edge of the street.

Although all accidents, however "tragic and deplorable," Clark v. Hodges, 185 Va. 431, 438, 39 S.E.2d 252, 256 (1946), must have some factual cause, "often described as the 'but for' . . . rule[,] [g]enerally a person is not liable to another unless but for [that person's] negligent act the harm would not have occurred." Wells v. Whitaker, 207 Va. 616, 622, 151 S.E.2d 422, 428 (1966). In this case, the personal representatives failed to carry their burden to establish that "but for" the Association's alleged negligence, the accident would not have occurred. Id. at 622, 151 S.E.2d at 428.

For these reasons, we conclude that the evidence was insufficient as a matter of law to establish that the alleged defects in the design of the pathway and its intersection with Sugarland Run Drive were a proximate

14

cause of the accident.[11]  Accordingly, we will reverse the judgment of the circuit court, set aside the jury verdict in favor of the personal representatives, and enter final judgment here in favor of the Association.

<u>Reversed and final judgment</u>.

---

[11] In light of our decision, we need not address the Association's other assignments of error.

15