## CIRCUIT COURT OF HANOVER COUNTY

Ronald A. Martin
and Debra B. Martin

v.

Hanover County
Board of Supervisors

December 12, 2000

Case No. CH335-98

BY JUDGE JOHN RICHARD ALDERMAN

The Court finds the following facts proved.

The property at issue is owned by Plaintiffs and consists of a 31.3 +/- tract of which Plaintiffs wish to develop approximately 8.248 acres into six lots. The tract is located in the Henry Magisterial District of the County close by the intersection of Georgetown Road and Rural Point Road. It is located outside the urban/suburban development area; no public utilities are available for the property nor are any contemplated in the foreseeable future. Though it was disputed in some measure during trial, the Court finds that the property generally drains in the direction of Crump Creek; hence there are implications for the potential development of the Crump Creek reservoir.

Plaintiffs purchased the property in 1997 for a price of $190,000 without contingencies, at issue herein zoning contingencies. The property has been taxed as agricultural at a reduced valuation.

In 1997, Plaintiffs applied to rezone a portion of the property from its zoning classification of A-1 (Agricultural/Forestal uses generally) to AR-1. Material prepared by Plaintiffs and the County staff in response are contained in the materials submitted and stipulated by the parties.

The County Planning Commission held hearings on the application and eventually voted five to two in favor of Plaintiffs' application.

In 1998, at its June meeting, the Defendant Board unanimously voted to deny Plaintiffs' application. This litigation follows.

The greater weight of the evidence established that the value of the property is approximately what Plaintiffs paid for it. Obviously, approval of Plaintiffs' development proposal provides the "highest and best" return on their investment with a reserve possibility to develop in the remote future. Alternate valuations are discussed *infra*.

## Applicable Law

Va. Code § 15.2-2200 expresses a number of principles that guide the development of Hanover County. Among several competing considerations are: "that agricultural and forestal land be preserved," and "that residential areas be provided with healthy surroundings for family life." Most important is "that the growth of the community be consonant with the official and economical use of public funds."

Va. Code § 15.2-2223 requires the County to have adopted a comprehensive plan for the physical development of the land. This plan may, and Hanover County's does, provide for "the designation of areas for various types of public and private development and use, such as different kinds of residential, business, industrial, agricultural, mineral resources, conservation, recreation, public service, flood plain and drainage, and other areas." The Comprehensive Plan may also, and Hanover County's does, provide for the "designation of historic areas ..." and the "designation of areas for the implementation of measures to promote the construction and maintenance of affordable housing, sufficient to meet the current and further needs of residents of all levels of income in the locality. ..."

As Plaintiffs concede, Hanover County also has valid zoning ordinances which "regulate, restrict, permit, prohibit and determine the following: 1. The use of land, buildings, structures and other premises for agricultural, business, industrial, residential, flood plain and other specific uses. ..." Va. Code § 15.2-2280.

As Plaintiffs concede, Hanover County's Comprehensive Plan and zoning ordinances adopted implementing the plan provide for development of residential areas like that proposed by Plaintiffs within designated areas. Plaintiffs' land lies outside those areas.

At the time of Plaintiffs' application, the Comprehensive Plan included a Land Evaluation and Site Assessment system ("LESA") for the protection of valuable farmland. LESA involves issuing numerical values as a way to

determine the viability of developing a given tract of land. LESA evaluates land according to two main criteria: (a) the technical quality of the land as an agricultural or forestal resource, and (b) land use, social, and economic viability of the existing rural land use.

The Court observes that the LESA system is designed to be as clear, concise, and firm as possible so that the overall goal of land protection may be met; nevertheless, the Court realizes that such evaluations should not be so inflexible as to constitute either "zoning-by-the-numbers" or an infringement upon the property rights of landowners.

A significant part of Plaintiffs' argument proceeds on the premise that the County staff's representation to them about whether and how the parcel might be developed "binds" the Board of Supervisors. Yet, as Plaintiffs must acknowledge, and do so acknowledge (T. 166.7), no mere agent of the County can so bind the Board of Supervisors. See, e.g., *Dick Kelly Enterprises v. City of Norfolk*, 243 Va. 373, 382, 416 S.E.2d 680, 685 (1992); *Board of Zoning Appeals of Bland County v. Caslin Systems, Inc.*, 256 Va. 206, 213, 501 S.E.2d 397, 401 (1998); *Board of Supervisors of Washington County v. Booher*, 232 Va. 478, 482, 352 S.E.2d 319, 321 (1987).

Plaintiffs contentions proceed on two main premises: first, that the Defendant's response to their rezoning request was arbitrary and capricious and, second, that Plaintiffs are deprived of the value of their property by reason of the disapproval of their rezoning application.

### Summary of Conclusion

The Court concludes that Plaintiffs have not been deprived of the value of their property by reason of the denial of their rezoning application. The property retains the value the Plaintiffs paid for it; if the property were split into three ten acre lots, it would yield Plaintiffs a profit. Finally, if alternate rezoning applications had been made, such as using AR-6 or the Rural Conservation, Plaintiffs could have realized a profit.

The Court further concludes that the Board of Supervisors properly denied Plaintiffs' rezoning application. Discussion follows.

### LESA

The principal dispute in this case concerns scoring of two factors of the LESA component, the second and third. Factor 2 is denominated "Distance to rural village or town center" and Factor 3 is denominated "Size of parcel."

*Factor 2*

The relevant portion of the Comprehensive Plan in effect at the time of Plaintiffs' application defined Factor 2 as:

Distance to Rural Village or Town Center:
From the center of the applicant's parcel, determine the distance to the nearest Rural Village ... the Town of Ashland *or* Overlay Urban Development District, or the intersection of two main thoroughfares as shown on the adopted Major Thoroughfare Plan.

In terms of standard legislative interpretation, it is abundantly clear that Plaintiffs' position is well taken. The comprehensive plan's definition specifies that measurement shall be made from the center of the applicant's tract to the nearest (a) rural village, (b) the Town of Ashland, (c) the Overlay Urban Development District, or (d) the intersection of two main thoroughfares. Thus, measurement, in the plain terms of the Comprehensive Plan, should be made to the four nearest boundaries, a rural village, or the town of Ashland, or the Overlay Urban Development District, or the intersection of two main thoroughfares.

It is clear, however, that whatever the terms of the Comprehensive Plan, it has never been so interpreted as Plaintiffs have alleged. Rather, as evidenced by the LESA Worksheet Summary (Defendant's Exhibit BB from the hearing of November 29, 2000), the County has always interpreted Factor 2 in terms of the distance from the applicant's tract to a "rural village or town center." In these terms, Plaintiffs' application fails. The issue for the Court then is whether strict legislative interpretation should overcome historical interpretation.

The Court concludes that historical interpretation of Factor 2 has the greater weight. Plaintiffs' witness Paul Jalbert testified that his first and only evaluation of Factor 2 (T. 235) revealed confusion between a literal reading of the Comprehensive Plan and historical interpretation. Yet such a literal interpretation yields a result utterly at odds with the general tenor of the Comprehensive Plan and at odds with its historical application limiting its scope to "rural centers or town centers." To hold otherwise would invite development in the vicinity of every intersection of every major thoroughfare in the County and a ring of development around every overlay district and the Town of Ashland, such interpretation being wholly inconsistent with the law in general and the general tenor of the Comprehensive Plan in particular. The precedent established by granting a literal interpretation of Factor 2 would substantially negate the general thrust of the Comprehensive Plan to preserve

agricultural and forestal uses of land outside the Urban Overlay Zone. As Mr. Crescenzo opined on November 29th, the preference of the Comprehensive Plan is for such a predominance of agricultural and forestal uses outside the Urban Overlay Zone — especially as it relates to the provision of services such as utility services. Plaintiffs' strict interpretation is at odds with the general scheme.

The principles of construction regarding review of a rezoning application are clear. Great weight is to be given to the interpretation of the ordinance by those charged with the administration of the plan, and the decision should be reversed only if it is plainly wrong or based on erroneous legal principles. *Donna v. Board of Zoning Appeal*, 251 Va. 271, 467 S.E.2d 808 (1996).

Plaintiffs' reliance on several instances of variance is of little help in establishing a contrary notion. Plaintiff testified about six cases of rezoning subdivisions that he claims establish a contrary precedent. Only one, C21-91, "the Pointer Case" (Wooddy's Hundred) seems to indicate such a literal application of the Factor 2 definitional scoring. Other instances cited by Plaintiffs, and agreed to by Defendant, are family subdivisions.

It is clear that the law of the Commonwealth favors family subdivisions and the Board of Supervisors has equated family subdivisions with rezoning. This is of no moment to Plaintiffs' case. The only exception to Plaintiffs' case against the Board of Supervisors then is the case of Parson's Cause, which the Court regards as utterly unique given the historic nature of the subdivision involved therein — conceded by Plaintiffs. The Court takes notice that this application provided for the presentation of Patrick Henry's birthplace, a significant factor in the Comprehensive Plan, i.e., historic presentation.

*Factor 3*

The literal terms of Factor 3 are:

Obtain parcel size from Real Estate Tax Records. If unavailable, obtain by measuring off of Tax Map.

Plaintiffs' evidence and the Board's argument demonstrate that Plaintiffs may manipulate Factor 3 scores by proposing the subdivision and rezoning of less than ten acres of the trust. Plaintiffs propose to develop only eight and a fraction acres, and, under the terms of the definitions, such gives a Factor 3 score of zero, as demonstrated in the Foster case (C16-93). Hence, the Court gives little weight to Plaintiffs' evidence as it relates to their scoring of a part of their parcel. Moreover, the terms of the definition of Factor 3 belie Plaintiffs' attempted definition since, from the tax records, the boundaries of

a portion of a plot could not be determined. Hence, the Court relies upon the definition of Factor 3 that scores the entire plot, as opposed to the partial plot, as appropriate.

## Plaintiffs' Claim of a Taking

Plaintiffs argue that the actions of the Defendant Board deprive them of a part of the value of their property. Using Professor Berryhill's "bundle of sticks" analogy, Plaintiffs argue that one of their sticks has been taken away without compensation. Plaintiffs' argument, however, proceeds on a false analogy. The argument equates a right to apply with a right to have the application approved.

It is clear that Plaintiffs' parcel has value even if only developed in three ten-acre lots permitted under present zoning. As Defendant Board correctly notes, "there is no unconstitutional taking unless the government's action deprives the landowner of all economic use of the land." *Helmick v. Town of Warrenton*, 254 Va. 225, 233, 492 S.E.2d 113, 117 (1997); *Board of Supervisors of Prince William County v. Omni Homes, Inc.*, 253 Va. 59, 72 481 S.E.2d 460, 467 (1971). The Defendant Board's actions did not deprive Plaintiffs of the value of their property; Plaintiffs bought the property on the speculation that they could enhance its value by rezoning and selling it. They could not enhance their "bet" by obtaining a rezoning contingency when they purchased the property.

The Court's conclusion is that there was no unconstitutional "taking" of Plaintiffs' property's speculative value.

## Conclusions

A Court reviewing a rezoning denial may not substitute its judgment for that of the legislative body unless the Board of Supervisors has clearly abused its power. *Byrum v. Board of Supervisors of Orange County*, 217 Va. 37, 225 S.E.2d 369 (1976). There is a presumption of legislative validity in the Board's decision that may be overcome only if it is proved that the zoning classification existing at the time of the application was unreasonable and that the rezoning classification is reasonable. E.g., *Board of Supervisors of Roanoke County v. International Funeral Services, Inc.*, 221 Va. 840, 275 S.E.2d 586 (1981). Even if the evidence is in equipoise, i.e., the question is "fairly debatable," the Board's decision must be sustained. *Board of Supervisors of Fairfax County v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982).

It is clear that the Board's decision in this case was consistent with its Comprehensive Plan and the Board's decision must be, therefore, sustained. See, e.g. esp. *City Council of Salem v. Wendy's of Western Virginia, Inc.*, 250 Va. 12, 471 S.E.2d 469 (1996).

While it might be a "well thought-out plan" that Plaintiffs presented to the Board of Supervisors, and one might well regard it as an admirable use of their property, the Court finds the Plaintiffs have not borne their burden of proof and accordingly sustains the Board's decision.