LAURIE C. WOOLDRIDGE, ET AL.

V.

ECHELON SERVICE COMPANY

Record No. 910841

April 17, 1992

Present: All the Justices

*Bruce A. Fredrickson (Susan L. Brackshaw; John A. Keats; Webster & Fredrickson*, on briefs), for appellants.

*Francis J. Prior, Jr. (Siciliano, Ellis, Dyer & Boccarosse*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this wrongful death action, we consider whether the trial court erred in setting aside a jury verdict for the plaintiff and entering judgment in favor of the defendant on the ground that there was no credible evidence to support the verdict.

Echelon Service Company (Echelon) entered into a contract with the General Services Administration (GSA) to provide security services for federal employees and other authorized persons at a building complex known as Crystal Mall 2 in Arlington. The security services to be provided included controlling access to the building, patrolling, and "protecting occupying personnel against fire, injury, theft, destruction, molestation and vandalism."

On the evening of November 29, 1985, two Echelon security guards, Wavor C. Jewell and Joseph Thrash, were stationed in the

lobby of the building. A few minutes after 6:00 p.m., Jewell saw a "flash in the elevator corridor . . . [l]ike someone had ran . . . from the down elevator to the up elevator." He called out to the individual. The individual did not respond, and Jewell did not pursue the individual.

At 6:18 p.m., Jewell and Thrash received a telephone call from the 11th floor of the building reporting that a woman was screaming. Jewell went to the 11th floor where he was confronted by Michael Johnson, holding a pair of long scissors in his hand. Johnson dropped the scissors and fled. Jewell heard a sound in Room 1101 and stepped inside to find Linda M. Billings, an Environmental Protection Agency employee, wearing a bloody shirt and wheezing. Jewell testified that Ms. Billings told him to stop the man, "[h]e's got my credit cards." Jewell pursued Johnson and eventually apprehended him in the lobby.

Ms. Billings made her way to the elevator and descended to the lobby. Another Environmental Protection Agency employee, finding Ms. Billings in the elevator, assisted her and called the "911" telephone number. Emergency medical personnel arrived and administered CPR to Ms. Billings when her vital signs began to fail. She was then taken to a hospital where she underwent heart repair surgery. The surgery was unsuccessful, and Ms. Billings died of exsanguination that evening.

Laurie C. Wooldridge and Lisa B. Kemler, co-administrators of the estate of Linda Billings (collectively, Wooldridge), filed a motion for judgment under the Wrongful Death Statute alleging, *inter alia*, that Echelon was liable for the death of Linda Billings. Wooldridge asserted that Billings was a third party beneficiary of Echelon's contract to provide security services to the GSA and that Echelon's breach of that contract resulted in Billings's death. At the close of Wooldridge's evidence, Echelon made a motion to strike the evidence, which was denied. Echelon renewed that motion at the close of all evidence, and the court again denied the motion.* The jury returned a verdict in favor of Wooldridge and awarded damages of $548,070.89.

Echelon filed a motion to set aside the verdict. After considering memoranda and argument of counsel, the trial court granted

---

* The trial court, in considering the motions to strike the evidence, appropriately let the case proceed to the jury, thereby, in the court's words, "placing the case in a position where one trial could lead to a single disposition of the case." *See Brown* v. *Koulizakis*, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985).

Echelon's motion and entered judgment for Echelon. We awarded Wooldridge an appeal.

The standard of review applicable to cases where the trial court has set aside a jury verdict for the plaintiff is well established: the jury verdict must be reinstated and judgment entered on the verdict if there is any credible evidence in the record to support the jury verdict. *Oberbroeckling* v. *Lyle*, 234 Va. 373, 378, 362 S.E.2d 682, 685 (1987). As we review the evidence, Wooldridge is entitled to the benefit of all substantial conflicts in the evidence and all reasonable inferences which may be drawn from the facts in evidence. *Graves* v. *Nat. Cellulose Corp.*, 226 Va. 164, 169-70, 306 S.E.2d 898, 901 (1983).

During argument on the motion to set aside the verdict, Echelon conceded that Wooldridge introduced evidence from which a jury could find a breach of contract. Thus, the specific issue is whether there is any credible evidence to allow the jury to find that the breach of contract was a proximate cause of Billings's death. The trial court concluded that there was no evidence to show how or when the assailant, Johnson, entered the building, and, in the absence of such evidence, the jury's finding of "a nexus between the entry of the 'flash' into the building, the failure to pursue the 'flash' to the exact site of his crime, (the alleged breach), and the ultimate damage done could only have been based upon surmise, conjecture, and speculation by the jury." We disagree.

Proximate cause need not be established "with such certainty as to exclude every other possible conclusion." *Northern Virginia Power Co.* v. *Bailey*, 194 Va. 464, 471, 73 S.E.2d 425, 429 (1952). Furthermore, the facts may be established by circumstantial evidence, and a jury may draw reasonable inferences and deductions from such evidence. *Fobbs* v. *Webb Building Ltd. Partnership*, 232 Va. 227, 230, 349 S.E.2d 355, 357 (1986). In this case, Wooldridge was not required to disprove that Johnson entered the building by another means. Wooldridge needed only to produce sufficient evidence for the jury to conclude that Johnson was the "flash" seen and called to by Jewell, and that he gained access to the upper floors of the building at that point. *See Klingbeil Management Group Co.* v. *Vito*, 233 Va. 445, 447, 357 S.E.2d 200, 201 (1987).

Jewell testified that the "flash" was a person, and although the person did not respond to his call, Jewell did not take any

measures to pursue the individual or require him to comply with the procedures for admission to the building. Jewell saw this person run from the "down elevators" (those connecting the garage and public concourse to the lobby), to the "up elevators" (those connecting the lobby to the higher floors). The telephone call alerting the officers to the attack on the 11th floor was received a short time thereafter. Johnson, Billings's assailant, was the sole unauthorized person found in the building at the time of the assault. Based upon this circumstantial evidence, we think the jury reasonably could infer that Johnson was the person Jewell saw running from the "down elevators" into the "up elevators". Because such inference is reasonable, the jury's finding is not the product of mere conjecture, surmise, or speculation.

■ This evidence, therefore, was sufficient to allow the jury to find that Johnson entered the building through the elevators just after 6:00 p.m. on November 26, 1988, that Jewell called to Johnson, that Johnson did not respond, and that Jewell did not pursue Johnson to obtain compliance with the admission procedures for the building or investigate further. We think, therefore, that the record contains credible evidence upon which a jury could conclude that the inaction was a proximate cause of Billings's death. Accordingly, we will reverse the judgment of the trial court and enter final judgment for Wooldridge reinstating the jury verdict.

*Reversed and final judgment.*