Present: All the Justices

THE ATRIUM UNIT OWNERS ASSOCIATION

v. Record No. 022417  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    September 12, 2003
SHARON KING

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

In this negligence case, the dispositive issue is whether the plaintiff produced sufficient evidence from which a jury reasonably could infer a causal connection between a condominium unit owners association's alleged negligence regarding a convenience key and the damages sustained by the plaintiff in a burglary of her condominium. We conclude that the plaintiff failed to establish proximate causation and will, therefore, reverse the judgment of the circuit court sustaining a jury verdict in favor of the plaintiff.

MATERIAL FACTS AND PROCEEDINGS

Sharon King owned a condominium unit on the sixth floor of The Atrium, a high-rise condominium complex located in Arlington County. As required by The Atrium Unit Owners Association Rules and Regulations, King provided the general manager a key to her unit for use in an emergency. The Rules also permitted residents to deposit an additional key called a "convenience key" with

the general manager.  The convenience key would be given to those persons specifically authorized by the resident on an "admittance envelope."  King chose to take advantage of this service.

On November 12, 1997, King left for a trip to California.  On November 16, 1997, King received a voice mail message from Thomas K. Meyer, the real estate agent with whom King had listed her condominium for sale.  Meyer informed King that he was unable to show her condominium to some potential buyers because the convenience key was missing.  King then called her daughter, Lenette Lepore, and asked her to leave a key for Meyer at The Atrium's "front desk."  When Lepore went to her mother's condominium the next day, she discovered that the door was unlocked and the condominium was not in the condition in which her mother typically "left her house."  Clothes were lying on the floor and several drawers and cabinet doors were open. Lepore called her mother and the police to report a possible burglary.  When King returned home the next week, she found that numerous items, including clothing, jewelry, coats, and electronic equipment, were missing from the condominium.

King subsequently filed a motion for judgment in the circuit court against The Atrium Unit Owners Association

(Atrium), Polinger Company, Polinger, Shannon & Luchs, and Brooks Business Transfer, Inc.[1] Regarding Atrium, King alleged, as pertinent to the issues on appeal, that Atrium was negligent by failing "to train employees in security, . . . to store securely spare keys, to keep inventories of spare keys, to document adequately the distribution and return of spare keys, to follow established procedures regarding keys and control of the Atrium property, and to use due care under the circumstances." King further alleged that Atrium's negligence "was the sole, direct and proximate cause of [her] incurring a significant monetary loss of property, as well as considerable mental distress."

At trial, Corporal Robert Rutledge, the Arlington County police officer who responded to Lepore's call about the burglary, testified that he saw no signs of "forced entry" into King's condominium. He stated that, in most burglaries where access is gained other than by forced entry, the burglar has either been allowed in by someone, used a key, or entered through an unsecured door or window. Corporal Rutledge testified that he found the sliding glass

---

[1] Polinger Company and Polinger, Shannon & Luchs were allegedly retained by Atrium to manage the condominium building. Brooks Business Transfer, Inc. was a commercial moving company whose employees were allegedly in the condominium complex around the time of the burglary of

door to the condominium's balcony unlocked and that it is not "unheard of" for burglars to gain access to high-rise apartments by means of a balcony. However, Corporal Rutledge conceded that the location of King's condominium in the building and the distance between balconies would make access "from balcony to balcony" difficult.

King's real estate agent, Meyer, testified that he was familiar with Atrium's procedure for obtaining a convenience key from the front desk. Once the personnel at the front desk determined that there was a permission slip for a particular person, they checked the key out to that individual. Meyer stated that, although the procedure for returning a key required the person to "sign the key back in" by initialing the key log, occasionally he would simply "hand it to [a person at the desk]" or "set it on the counter top."

Continuing, Meyer stated that he had "a standing permission slip" from King allowing him to check out King's convenience key for the purpose of showing her condominium to potential buyers. Meyer testified that when he asked for King's convenience key on November 16, 1997, he was told that "they didn't have a key for it." Meyer had used

King's unit. All these defendants were dismissed with prejudice from the action.

4

the key on November 2, 1997, but insisted that he had returned it to the front desk after he had shown King's condominium to a perspective buyer.  He admitted, however, that he did not sign the key back in on November 2 by initialing the key log.  Meyer was the last person to sign out the convenience key for King's condominium before the burglary.

Shalu Wohldegioris, the front desk supervisor both before and after the burglary of King's condominium, explained that the convenience keys were physically kept in a "box mounted on the counter in the inner side of the front desk."  The emergency keys, however, were stored "in a locked box on a wall in the general manager's office." According to Wohldegioris, all the front desk staff had access to the box containing the convenience keys.[2]  He also admitted that, in November 1997, Atrium did not have any procedure in effect for determining the whereabouts of a convenience key that was not returned to the front desk.

At the conclusion of King's case-in-chief, Atrium moved to strike her evidence.  The court took the motion to

---

[2] According to a private investigator hired to investigate the burglary at King's condominium, Atrium's general manager admitted that both employees and non-employees had access to the box where the convenience keys were stored and that "there was lots of activity around the box."

strike under advisement with regard to the negligence claim against Atrium and allowed that claim to proceed to the jury.[3]  The jury returned a verdict in favor of King.

Atrium filed a post-trial motion to set aside the verdict and to enter judgment for it as a matter of law. Atrium asserted that the court should have granted its earlier motion to strike because King "failed to establish a duty, failed to establish a breach of any duty, failed to establish notice, and failed to establish a causal relationship between the duty/breach and damages."  Atrium argued that each of these failures was fatal to King's negligence claim.  At the conclusion of a hearing on the motion, the circuit court denied Atrium's motion.  The court stated that "there was sufficient evidence to send the case to the jury" and that "[t]he jury's verdict is not plainly wrong."  The court subsequently entered an order denying Atrium's motion and granting judgment to King on the jury's verdict.  Atrium appeals from that judgment.

ANALYSIS

"[A] party who comes before us with a jury verdict approved by the trial court 'occupies the most favored position known to the law.' "  Ravenwood Towers, Inc. v.

_____

[3] The court granted the motion to strike with regard to a breach of contract claim that King had alleged against

6

Woodyard, 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992) (quoting Pugsley v. Privette, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980)); accord Sugarland Run Homeowners Ass'n v. Halfmann, 260 Va. 366, 371, 535 S.E.2d 469, 472 (2000). On appeal, we view the evidence and all reasonable inferences in the light most favorable to the prevailing party at trial. Nationwide Mut. Ins. Co. v. St. John, 259 Va. 71, 76, 524 S.E.2d 649, 651 (2000); Ravenwood, 244 Va. at 57, 519 S.E.2d at 630. A trial court's judgment will not be set aside "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680; accord Ravenwood, 244 Va. at 57, 519S.E.2d at 630. However, upon applying these principles, if it appears that a judgment is plainly wrong or without evidence to support it, we must set it aside. Sugarland Run Homeowners Ass'n, 260 Va. at 371, 535 S.E.2d at 472.

To establish actionable negligence, King had the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage. Fox v. Custis, 236 Va. 69, 73, 372 S.E.2d 373, 375 (1988); Trimyer v. Norfolk Tallow Co., Inc., 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951); see Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 132, 523 S.E.2d 826, 830 (2000). The

_____

Atrium.

7

dispositive question in this appeal is whether King established a causal connection between Atrium's alleged negligent handling of her convenience key and the damages she suffered as a result of the burglary.

Atrium argues that King did not present any evidence proving "how, or by whom, or even whether . . . the convenience key was used in the burglary." Atrium asserts that this failure was fatal to King's case and, that by submitting the case to the jury, "the trial court erroneously invited the jury to speculate." On this issue, King contends that there was credible circumstantial evidence supporting the jury's determination as to proximate causation. King points to the evidence that she could account for all the keys to her condominium except for the missing convenience key, that there were no signs of forced entry into her condominium, and that any other reasonable method of "unforced entry" was excluded. We agree with Atrium.

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970). Proximate cause is generally a question

of fact to be resolved by a jury.  Jenkins v. Payne, 251 Va. 122, 128, 465 S.E.2d 795, 799 (1996).  Although facts may be established by circumstantial evidence, Fobbs v. Webb Bldg. Ltd. P'ship, 232 Va. 227, 230, 349 S.E.2d 355, 357 (1986), such evidence "must be sufficient to establish that the result alleged is a probability rather than a mere possibility."  Southern States Coop., Inc. v. Doggett, 223 Va. 650, 657, 292 S.E.2d 331, 335 (1982).  Before a question of fact with regard to proximate cause may be submitted to a jury, the evidence proving the causal connection must be "sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference."  Beale, 210 Va. at 522, 171 S.E.2d at 853 (quoting Hawkins v. Beecham, 168 Va. 553, 561, 191 S.E. 640, 643 (1937)).

In Wooldridge v. Echelon Service Co., 243 Va. 458, 459, 416 S.E.2d 441, 442 (1992), we considered whether a plaintiff produced sufficient evidence to establish proximate cause.  There, a woman was fatally attacked in a building for which Echelon provided security services.  Id. at 460, 416 S.E.2d at 442.  At trial, one of the security guards on duty at the time of the attack testified that he saw a " 'flash in the elevator corridor . . . [l]ike someone had ran . . . from the down elevator to the up

9

elevator.' " Id. at 459-60, 416 S.E.2d at 442. The security guard stated that he called out to the individual but that the individual did not respond. The security guard did not pursue the individual. Id. at 460, 416 S.E.2d at 442. Shortly thereafter, the security guards received a telephone call reporting that a woman was screaming on the 11th floor of the building. Id. The security guard testified that, when he went to the 11th floor to investigate, he was confronted by a man holding a pair of long scissors in his hand. Id. The security guard also found the victim "wearing a bloody shirt and wheezing." Id. Although the man initially fled, he was later apprehended in the lobby of the building. Id.

A jury returned a verdict in favor of the plaintiff, but the trial court set aside the jury verdict and entered judgment for the defendant. Id. at 460-61, 416 S.E.2d at 442-43. The trial court concluded that the jury's finding of "'a nexus between the entry of the 'flash' into the building, the failure to pursue the 'flash' to the exact site of [the] crime, . . . and the ultimate damage done could only have been based upon surmise, conjecture, and speculation by the jury.'" Id. at 461, 416 S.E.2d at 443.

We reversed, stating that the plaintiff "needed only to produce sufficient evidence for the jury to conclude

that [the man apprehended] was the 'flash' seen and called to by [the security guard], and that he gained access to the upper floors of the building at that point." Id. at 461, 416 S.E.2d at 443. We noted that the security guard testified that the "flash" was a person and that, after calling out to the individual, he did not pursue the man further or attempt to require him to follow the procedures for admission to the building. Id. at 461-62, 416 S.E.2d at 443. The evidence also showed that the call reporting an attack on the 11th floor was received a short time later and that the man apprehended was the sole unauthorized person found in the building at the time of the attack. Id. We concluded that, "[b]ased upon this circumstantial evidence, . . . the jury reasonably could [have] infer[red] that [the assailant] was the person [the security guard] saw running from the 'down elevators' into the 'up elevators' " and that the security guard's "inaction" was a proximate cause of the victim's death. Id.

A plaintiff has the burden "to establish a causal connection between the defendant's alleged negligence and the injury of which the plaintiff complains." Commercial Distributors, Inc. v. Blankenship, 240 Va. 382, 395, 397 S.E.2d 840, 847 (1990). Thus, in this case, King had the burden to produce evidence from which the jury reasonably

11

could infer that, as a result of Atrium's alleged negligence, the convenience key was used to access her condominium for the purpose of committing a burglary.  We conclude that King failed to carry this burden.

The evidence presented at trial established that the convenience key could not be found at the front desk when Meyer asked for it on November 16 and that there were no signs of forced entry into King's condominium.  But, Corporal Rutledge testified that the use of a key was only one of several ways in which a burglar could have gained access to the condominium without using force.  Although the location of King's balcony would have made access by way of the balcony difficult, it is, nevertheless, notable that Corporal Rutledge found the sliding glass door to the balcony unlocked.  Moreover, Atrium's employees had access to the convenience keys, but King presented no evidence to show what happened to her convenience key after Meyer returned it to the front desk on November 2, whether any of Atrium's employees saw her key after that date, or whether the convenience key, as opposed to another key, was even used in the burglary.  "Proof of 'possibility' of causal connection is not sufficient." Wilkins v. Sibley, 205 Va. 171, 175, 135 S.E.2d 765, 767 (1964).  The evidence in this case did not establish that Atrium's alleged negligent

handling of the convenience key was an "act or omission which, in natural and continuous sequence, . . . produc[ed] the [burglary], and without which [the burglary] would not have occurred."  Beale, 210 Va. at 522, 171 S.E.2d at 853.

CONCLUSION

Here, unlike Wooldridge, there was nothing in the record from which the jury could reasonably infer a causal connection between Atrium's alleged negligence and the damages King sustained as a result of the burglary. Therefore, the circuit court erred by submitting the case to the jury and by affirming a jury verdict that could only have been "the product of mere conjecture, surmise, or speculation."  Wooldridge, 243 Va. at 462, 416 S.E.2d at 443.

For these reasons, we will reverse the judgment of the circuit court and enter final judgment here in favor of Atrium.

                              Reversed and final judgment.