Present: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Stephenson, S.J.

JOHN DOE

OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 052137                    January 12, 2007

RUSSELL M. TERRY, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Leafe, Judge

In this appeal, we consider whether the plaintiff established by a preponderance of the evidence that the defendant, John Doe, was negligent.

Plaintiff, Russell M. Terry, filed his motion for judgment against John Doe, an unknown driver of an automobile. Plaintiff alleged that he was injured as a result of John Doe's negligence. At the conclusion of a jury trial, the jury returned a verdict in favor of the plaintiff in the amount of $175,000. The circuit court reduced the verdict from $175,000 to the amount of the ad damnum, $100,000, and the court entered a judgment confirming the verdict. The defendant, John Doe, appeals.

Terry is armed with a jury verdict and, thus, "occupies the most favored position known to the law." Pugsley v. Privette, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980); accord Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 547 (2003). Additionally, we will recite the facts and all reasonable inferences therefrom in favor of Terry, the

prevailing party in the circuit court.  Atrium Unit Owners

Ass'n, 266 Va. at 293, 585 S.E.2d at 547.

Terry was employed as a safety service patrolman for the

Virginia Department of Transportation and stationed at the

Hampton Roads Bridge Tunnel.  On June 1, 2002, about 3:00

a.m., Terry entered the tunnel and began to walk towards the

bottom of the tunnel to clean camera lenses on equipment used

to monitor vehicular traffic.  He was walking on a "catwalk"

in the direction of oncoming traffic.  The "catwalk" is 46

inches above the tunnel's traffic lanes.  The posted speed

limit in the tunnel is 55 miles per hour.

After Terry had cleaned three camera lenses, he observed

three approaching vehicles.  Terry testified as follows:

"[O]ne [vehicle] was a car followed by a tractor-trailer.

When the tractor-trailer came by, I nodded my head down so not

to be hit with the debris that comes with it.  And I picked my

head back up and started walking again, and that's when I was

struck in my right forehead."

Terry further testified during his direct examination:

> "Q:  All right.  When the truck – during the
> time frame when there is the three vehicles, there's
> the truck, where was the third vehicle?
> "A:  I hadn't yet seen the third vehicle
> coming.  When the truck come by, like I said, they
> travel 55 miles an hour, so everything was like
> within split seconds of one another.  Once the
> tractor-trailer came by I raised my head, and that's

2

when I noticed another vehicle had come down from the bottom of the tunnel and was working its way towards me.

"Q: All right. And at any time while you were walking that tunnel, did you hear anything in the tunnel, other than the sound of traffic?

"A: Yes. After the tractor-trailer had practically gotten by me and my head was still down I heard some people yelling in the tunnel.

"Q: What kind of yelling did you hear?

"A: Like catcalls. Just somebody whooping it up coming through there.

"Q: All right. And tell us, from the time period of hearing the whooping it up until the time that something happened to you how much time passed?

"A: It's hard to say. Maybe two to three seconds. It was – it was that fast.

"Q: All right. And what if anything happened during those two to three seconds? What did you – what did you see, hear, feel, anything about that? Tell us what –

"A: Just after I heard the voices I lift my head, started walking. The car was approaching and then I was hit with something, and that's it.

"Q: Do you have any idea what you were hit with?

"A: At the time, no.

"Q: At the time did you have any idea? Did you see –

"A: No, I didn't. Once it hit me I was out cold."

During cross-examination at trial, Terry gave the following testimony about the accident:

"Q: All right. Now, you say . . . that you were aware of three vehicles?

"A: I was –

"Q: Is that my understanding?

"A: Not necessarily that area. I was aware of three vehicles that had come my direction in my approach down to the bottom of the tunnel.

"Q: The first one was an automobile, right?

"A: Yes.

"Q: The second one was a tractor-trailer?

3

"A:  Yes.

"Q:  And when the tractor-trailer passed you, you were not aware of the third one?

"Q:  Not at that -- no.

"A:  All right.  And you have indicated that you got -- thought something happened just milliseconds after the tractor-trailer had passed you, right?

"A:  Yes.

"Q:  And in those milliseconds, you had lifted your head and had observed that there was another automobile approaching from the bottom of the tunnel, right?

"A:  Yes.

"Q:  Okay.  So, there was no vehicle right there behind the tractor-trailer, correct?

"A:  Not that I'm aware of, no.

. . . .

"Q:  Other than the automobile approaching from the bottom of the tunnel?  But you didn't see anything airborne coming towards your body, true?

"A:  No, I did not.

"Q:  You don't know what struck you, if anything, true?

"A:  Yes, that's true.

"Q:  All right.  You don't know if there was something that came towards you and struck you?  You don't know where it came from, true?

"A:  Well, no.  Whatever struck me come from my front, because it hit me on my head on my right side.

. . . .

"Q:  All right.  And you can't tell us whether it came from a vehicle's passenger side or the driver's side, true?

"A:  That's true.

"Q:  The catcalls, the yell or what have you, was something that you heard, but couldn't identify where it came from; is that true?

"A:  Well, it's something I heard.  It came from inside the tunnel."

4

Raymond R. Gray, Jr., who was also a safety service patrolman at the Hampton Roads Bridge Tunnel, responded to the accident scene. He found Terry unconscious, lying in one of the eastbound traffic lanes of the tunnel. Terry had a "huge knot" that looked like a "golf ball" on the side of his head. Gray found "pieces of glass all around" Terry.

Robert Mauldin, a traffic control supervisor at the Hampton Roads Bridge Tunnel, also responded to the accident location. He also found broken glass in the vicinity where Terry was injured.

Doe argues that Terry failed to establish that the defendant was negligent. Continuing, Doe asserts that Terry did not present evidence that Doe was the individual who threw the object that injured the plaintiff. Responding, Terry contends that he presented evidence that would permit the jury to infer that Doe was the individual who threw the bottle that injured the plaintiff. We disagree with Terry.

This Court has repeatedly held that a plaintiff in a tort action must establish negligence by a preponderance of the evidence. For example, over 100 years ago, we stated in Chesapeake & O. Ry. Co. v. Heath, 103 Va. 64, 66-67, 48 S.E. 508, 508-09 (1904):

"The party who affirms negligence must establish it by proof sufficient to satisfy

5

reasonable and well balanced minds. The evidence
must show more than a probability of a negligent
act. An inference cannot be drawn from a
presumption, but must be founded upon some fact
legally established. This Court has repeatedly held
that when liability depends upon carelessness or
fault of a person, or his agents, the right of
recovery depends upon the same being shown by
competent evidence, and it is incumbent upon such a
plaintiff to furnish evidence to show how and why
the accident occurred – some fact or facts by which
it can be determined by the jury, and not be left
entirely to conjecture, guess or random judgment,
upon mere supposition, without a single known fact.
C. & O. Ry. Co. v. Sparrow, 98 Va. 630-641, 37 S.E.
302; N. & W. R. R. Co. v. Cromer's Adm'x., 99 Va.
763-765, 40 S.E. 54; Southern R. R. Co. v. Hall's
Adm'r., 102 Va. 135, 45 S.E. 867."

Accord Virginia Ry. & P. Co. v. Winstead, 119 Va. 326, 333, 89

S.E. 83, 85 (1916).

This basic tort principle has remained intact, without

equivocation, and we restated this rule in Waters v. Holloman,

216 Va. 726, 730, 222 S.E.2d 549, 552-53 (1976) (quoting

Weddle v. Draper, 204 Va. 319, 322, 130 S.E.2d 462, 465

(1963)):

"Negligence cannot be presumed from the mere
happening of an accident. The burden is on the
plaintiff who alleges negligence to produce evidence
of preponderating weight from which the jury can
find that the defendant was guilty of negligence
which was a proximate cause of the accident. The
evidence produced must prove more than a probability
of negligence and any inferences therefrom must be
based on facts, not on presumptions. It is
incumbent on the plaintiff who alleges negligence to
show why and how the accident happened, and if that
is left to conjecture, guess or random judgment, he
cannot recover."

6

We recently reaffirmed this fundamental precept in Blue Ridge Service Corp. v. Saxon Shoes, 271 Va. 206, 218, 624 S.E.2d 55, 62 (2006): "It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover."

When a plaintiff files a negligence action against an unidentified motorist, the plaintiff has the burden of proof to establish by a preponderance of the evidence that the unknown driver of the motor vehicle was guilty of negligence. See e.g., Lawson v. Doe, 239 Va. 477, 481-82, 391 S.E.2d 333, 335 (1990). And, as we have already stated, the plaintiff must produce evidence that proves more than a probability of the unknown driver's negligence and any inferences therefrom must be based on facts, not presumptions. Weddle, 204 Va. at 322, 130 S.E.2d at 465.

The plaintiff in this case, Terry, failed to establish by a preponderance of the evidence that John Doe, the driver of the unknown vehicle, was negligent. There is no evidence in the record that would permit a finder of fact to infer that the driver of the unknown vehicle was the individual who threw the bottle that struck Terry. The plaintiff, who was the only witness to the accident who testified at trial, stated that

there were three vehicles in the tunnel, and that he was injured after two of the vehicles passed him. After the tractor-trailer passed the plaintiff, he heard someone "yelling" and "voices." The plaintiff testified: "Just after I heard the voices I lift [sic] my head, started walking. The car was approaching and then I was hit with something, and that's it." The plaintiff's own testimony demonstrates that there may have been more than one person in the vehicle from which the plaintiff alleges someone threw the bottle that injured him.

The plaintiff does not know whether the unknown driver of the car threw the bottle or whether a passenger threw the bottle. He has no idea who threw the bottle. In response to the question, "And you can't tell us whether it [the object that struck you] came from a vehicle's passenger side or the driver's side, true?," the plaintiff responded, "That's true." The plaintiff's conclusion that the driver of the unidentified vehicle threw the bottle is based on conjecture, guess, or random judgment. This conclusion is not based upon any fact in the record before this Court.

Terry testified that he heard voices in the tunnel. We are compelled to infer from Terry's direct testimony that those voices emanated from the car that the unknown driver was

8

operating. Even if the voices did not emanate from the car that the unknown driver was operating, Terry's testimony that he heard voices indicated that other persons were in the tunnel, and one of those persons may have thrown the bottle that injured Terry. Terry has the responsibility to present evidence from which the jury could infer the driver of the unknown vehicle threw the bottle. The plaintiff failed to present such evidence.[*]

For the foregoing reasons, we will reverse the judgment of the circuit court and enter final judgment on behalf of John Doe.

<u>Reversed and final judgment</u>.

JUSTICE KINSER, with whom JUSTICE LACY and JUSTICE LEMONS join, dissenting.

I respectfully dissent because, in my view, the jury could have reasonably inferred from the evidence that John Doe was negligent. I would therefore affirm the circuit court's judgment in favor of Russell Terry.

The majority's holding today departs from several well-established principles. First, the jury, not this Court, determines the credibility of the witnesses and the weight of

---

[*] In view of our holding, we need not consider the litigants' remaining arguments.

the evidence.  See Southern Floors & Acoustics, Inc. v. Max-Yeboah, 267 Va. 682, 686, 594 S.E.2d 908, 911 (2004) ("Determining the credibility and the weight of the evidence is the province of . . . the jury.").  Second, "[i]f there is evidence to sustain the verdict, this [C]ourt should not overrule it and substitute its own judgment, even if its opinion might differ from that of the jury." Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961). Third, a verdict should stand "[w]hen conflicting inferences have been resolved by a jury and those necessarily underlying the conclusion reflected in the verdict are reasonably deducible from the evidence."  Henderson v. Gay, 245 Va. 478, 481, 429 S.E.2d 14, 16 (1993).  Finally, Terry, as the prevailing party in the circuit court, is entitled to have the evidence and all reasonable inferences viewed in the light most favorable to him.  Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 547 (2003).

With these principles in mind, I conclude, unlike the majority, that Terry proved how and why the accident happened. As the majority tacitly acknowledges, the jury could have reasonably inferred from the evidence showing glass and a piece of a bottle in close proximity to Terry's body that the object that struck him in the forehead was a bottle.  Nor does

10

the majority dispute that the jury could likewise have reasonably inferred that the bottle emanated from the third vehicle that passed Terry in the Hampton Roads Bridge Tunnel (the Tunnel) on the morning of the accident. Terry affirmatively stated that the object did not originate from the tractor-trailer because that vehicle had already passed him when he was struck, and he testified that the object hit him within moments of seeing the third vehicle approaching from the bottom of the Tunnel and hearing the "catcalls." We also know the third vehicle was being operated at the time of Terry's accident and the identity of its driver is unknown. It is therefore not conjecture or speculation to conclude that Doe was present in the Tunnel when the bottle struck Terry.

Thus, the primary issue upon which this appeal turns is whether the jury could have reasonably inferred from the facts presented that Doe threw the bottle, i.e., that he was negligent. The majority concludes that Terry's testimony indicated there may have been more than one person in the third vehicle and that, since he could not say whether the offending object came from the passenger or driver side of the vehicle, Terry's "conclusion that the driver of the unidentified vehicle threw the bottle is based on conjecture, guess, or random judgment." I disagree.

11

In my view, reasonable minds could draw different inferences from the evidence in this case, and under such circumstances, it is incumbent upon the reviewing court to respect the inference actually drawn by the fact finder. See Hoar v. Great Eastern Resort Mgmt., Inc., 256 Va. 374, 388, 506 S.E.2d 777, 786 (1998) ("A verdict may be properly based upon reasonable inferences drawn from the facts. If facts are present from which proper inferences may be drawn this is sufficient.") (quoting Northern Virginia Power Co. v. Bailey, 194 Va. 464, 470, 73 S.E.2d 425, 429 (1952)); see also Snyder, 202 Va. at 1016, 121 S.E.2d at 457. Terry testified that just prior to something striking the front, right side of his forehead, he heard what he described variously as "some people yelling in the [T]unnel" and "catcalls" like "somebody whooping it up coming through there." Thus, while the jury could reasonably have inferred from part of Terry's testimony that there was more than one person in the third vehicle, the jury also could have reasonably inferred that Terry heard "catcalls" from a single occupant of the third vehicle. Our prior decisions counsel against disturbing the fact finder's resolution of conflicting inferences in favor of the party prevailing at trial. Henderson, 245 Va. at 481, 429 S.E.2d at 16 (jury is "free to choose among all reasonable inferences"

12

that can be deduced from the evidence); <u>Lane v. Scott</u>, 220 Va. 578, 582, 260 S.E.2d 238, 240 (1979).

Furthermore, I disagree with the majority's apparent belief that Terry's burden included an obligation to affirmatively <u>disprove</u> the presence of a passenger in the vehicle driven by Doe.  Terry's inability to say whether the bottle came from the driver or passenger side of the third vehicle did not reduce the jury's verdict to speculation.  In the absence of any affirmative evidence with regard to whether there was or was not a passenger in that vehicle, the jury could have reasonably inferred that the unknown driver of the vehicle threw the bottle.  Terry did not have to prove that there was <u>not</u> a passenger in the vehicle in order for the jury to have drawn that inference.

For these reasons, I respectfully dissent and would affirm the judgment of the circuit court.[*]

---

[*] I also find no merit in Doe's second assignment of error challenging the timing of the circuit court's finding that Terry's injuries arose out of the use of a vehicle.  Normally, the issue of coverage afforded by an insurance policy is decided in a motion for declaratory judgment.  <u>See</u> <u>Rodgers v. Danko</u>, 204 Va. 140, 143, 129 S.E.2d 828, 830 (1963).  However, based on the record in this case, I cannot say the circuit court erred in finding that the parties, prior to the jury trial, agreed to submit the coverage issue to it for resolution.