**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1755

DAVID ERROL WERT,

            Plaintiff - Appellant,

      v.

JEFFERDS CORPORATION, d/b/a Homestead Materials Handling
Company,

            Defendant - Appellee.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  Samuel G. Wilson, District
Judge.  (7:07-cv-00053-sgw-mfu)

Argued:  March 26, 2009               Decided:  May 6, 2009

Before MOTZ and AGEE, Circuit Judges, and Thomas D. SCHROEDER,
United States District Judge for the Middle District of North
Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Steven D. Smith, HAGA & RHODES, PLC, Christiansburg,
Virginia, for Appellant.  Joy Lee Price, CASKIE & FROST,
Lynchburg, Virginia, for Appellee.  **ON BRIEF:** Pavlina B. Dirom,
CASKIE & FROST, Lynchburg, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this personal injury action, David Wert appeals from the grant of summary judgment to Jefferds Corporation, the lessor of a forklift that caused Wert serious injury. We affirm.

I.

Jefferds leases forklifts to Wert's employer, Yokohama Tire Company. At all relevant times, Jefferds bore responsibility for periodically inspecting and maintaining the forklifts.[*] To that end, Thomas Spence, an employee of Jefferds, serviced the forklifts on Yokohama's property. The inspection and maintenance included servicing of strobe lights, which operate when the forklifts are in use, and alarms, which sound when the forklifts are in reverse. Yokohama employees, however, found the reverse alarms and strobe lights irritating and so routinely disabled them.

On February 26, 2005, a Yokohama employee backed a forklift over Wert's left foot crushing all of its major bones. Wert did not see any strobe lights or hear any reverse alarm on the forklift, which would have warned him of its approach.

---

[*] It appears that Jefferds and Yokohama did not have a written contract in effect at the time of Wert's accident. But because the parameters of any contract (written or oral) do not affect the resolution of this appeal, we need not determine the terms of any possible contract.

Moreover, Wert's expert concluded that the strobe lights and reverse alarm were disconnected from their power source at the time of the accident. All parties agree that Spence performed the scheduled preventative maintenance for the forklift in question on February 18, 2005, eight days before the accident.

Seeking compensation for his injuries, Wert brought this action against Jefferds. The district court rejected all of Wert's theories of liability and granted summary judgment to Jefferds. Wert timely appeals, contesting the grant of summary judgment with respect to only one claim -- common law negligence.

## II.

We review de novo a district court's grant of summary judgment, viewing the facts in the light most favorable to the nonmoving party. Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). As the site of the accident, Virginia law governs this case. Id. Moreover, in determining whether the district court erred in granting Jefferds summary judgment, we may only consider the materials presented to the court at the time it ruled on that motion. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 242 (4th Cir. 2002). Finally, in order to prevail on a negligence claim, a plaintiff like Wert must offer evidence from which a jury could conclude

3

that the defendant -- Jefferds -- owed him a legal duty, which it breached. <u>Atrium Unit Owners Ass'n v. King</u>, 585 S.E.2d 545, 548 (Va. 2003). With these principles in mind, we turn to the case at hand.

III.

Wert initially contends that the district court erred in holding, "<u>as a matter of law</u>, that plaintiff was barred from a common law negligence claim because plaintiff David Wert was not in privity of contract with defendant Jefferds." Brief of Appellant at 8. The district court, however, never held that the lack of privity barred a negligence action. Rather the court held that (1) the only duty Jefferds possibly owed Wert arose from contract and (2) any such contractual duty could not give rise to recovery in negligence. The district court certainly did not err with respect to the second point. Well-established Virginia law holds that a duty that arises solely from a contract can only provide the basis for a contract claim; it cannot provide the basis for a negligence claim. <u>Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.</u>, 507 S.E.2d 344, 347 (Va. 1998).

The district court's initial conclusion -- that the only duty possibly owed by Jefferds to Wert sounded in contract -- requires a bit more analysis. This analysis also addresses

4

Wert's central contention: that he has presented facts sufficient for a jury to conclude that Jefferds breached some sort of common law, non-contractual duty.

Wert first argues that Jefferds had some non-contractual ongoing general duty to <u>inspect</u> the forklifts. Wert points to no authority for such a proposition, and common sense dictates that, absent a contractual obligation, a company that leases or repairs equipment owes no ongoing duty of inspection.

Alternatively, Wert contends that, once Jefferds undertook to service the forklift on February 18, that undertaking created a duty to repair the vehicle in a reasonable manner. No Virginia case explicitly recognizes such a duty, but even if we assume Jefferds owed Wert a duty of reasonable repair, Wert cannot prevail. For, in order to avoid summary judgment, Wert must offer evidence from which a jury could conclude that Jefferds breached this duty. Wert attempts to do this by asserting that Jefferds (1) failed to assure that an alarm was installed on the forklift at the time of the accident and/or (2) inadequately serviced the reverse alarm and strobe lights.

Wert's first repair argument fails because prior to the grant of summary judgment, Wert offered <u>no</u> evidence that the forklift did not have a reverse alarm. Although Spence testified at deposition that he often replaced reverse alarms on forklifts, this evidence does not provide <u>any</u> information about

5

the state of the reverse alarm on the particular forklift at issue.

To support his second repair argument, Wert primarily relies on the absence of a checkmark next to the item "pedestrian warning devices" on a February 18, 2005 service maintenance log and purported inconsistencies in Spence's deposition testimony as to whether he inspected the reverse alarm and strobe lights on that date. In fact, at deposition, Spence explained that he indicated the functioning of the reverse alarm and strobe lights by putting a checkmark next to the category "operation of accessories" (and not "pedestrian warning devices") on the service maintenance log. On the February 18 log, a checkmark in the first column next to "operation of accessories" indicates that Spence found that the "accessories" on the relevant forklift were "O.K." on that day. Spence also testified that if there had been a problem with the reverse alarm or the strobe lights he would have issued a work order for them, and that he did not do that.

Wert provides no evidence to support his contention that the strobe lights or reverse alarm were, in fact, included in the category "pedestrian warning devices." Instead, Wert relies on certain arguably contradictory deposition statements by Spence explaining why some items on the maintenance log lack a checkmark. Although this part of Spence's deposition is

6

slightly confusing, it is also irrelevant. Spence testified consistently that the inspection of the reverse alarm and strobe lights was included within "operation of accessories," an item clearly checked as "O.K." Indeed, Wert's attorney effectively conceded in the district court that Spence had adequately inspected and repaired the forklift when counsel agreed that eight days before Wert's accident Jefferds (through Spence) had "fixed it."

Wert's expert report similarly creates no jury issue as to breach of duty. The expert essentially stated that a reverse alarm could have prevented the accident and that Spence should have noticed a broken reverse alarm or strobe light. Although perhaps accurate, this opinion provides no information about the reasonableness or effectiveness of Spence's servicing on February 18, because it does not contain any information about the state of the alarm or lights when Spence <u>returned the forklift to Yokohama</u>. Wert's expert appears to assume that Jefferds had a duty of ongoing inspection, which, as discussed above, does not exist at common law.

Finally, Wert suggests Jefferds breached its duty of proper repair by not "fixing" the forklift to render it tamper-resistant. This argument fails for two reasons, both of which the district court identified. First, Wert offered no evidence that Jefferds "fixed" the reverse alarm or strobe lights at all.

7

In fact, no record evidence indicates the reverse alarm and strobe lights needed repair on February 18; rather a checkmark identified them as "O.K."  Second, uncontroverted evidence indicates that Spence generally repaired reverse alarms and strobe lights with butt connectors, which restore the wiring to its original strength.  Absent a contractual agreement to do otherwise, returning the forklift to its "normal, working condition" does not breach any duty of repair.  Baker v. Poolservice Co., 636 S.E.2d 360, 365 (Va. 2006).  Thus the record contains no evidence supporting a breach of duty.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.