Present: All the Justices

CHRISTOPHER BARTOLOMUCCI

                                        OPINION BY
v.    Record No. 140275        JUSTICE LEROY F. MILLETTE, JR.
                                        April 16, 2015
FEDERAL INSURANCE COMPANY, ET AL.

VU VO

v.    Record No. 140297

FEDERAL INSURANCE COMPANY, ET AL.


              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                        Thomas D. Horne, Judge

     In these appeals we consider the scope and application of

an insurance policy that provides coverage for a law firm

partner's vehicle only when that vehicle is "used in" a law

firm's business or personal affairs.

                    I.   Facts And Proceedings

     Vu Vo and Christopher Bartolomucci were involved in a

vehicle collision.  Based on his injuries, Vo filed a lawsuit

against Bartolomucci seeking $1,000,000 in damages.  The

vehicle which Bartolomucci was driving was insured under an

Allstate Insurance Company insurance policy with a $100,000

liability limit (the "Allstate Policy").  Vo is unwilling to

settle his suit within the Allstate Policy's limit.

     Because his potential liability exceeds the Allstate

Policy's limit, Bartolomucci filed a declaratory judgment

action in the Circuit Court of Loudoun County.  Bartolomucci

sought to establish that his vehicle fell within the scope of Federal Insurance Company's insurance policy issued to Bartolomucci's law firm, Hogan Lovells US, LLC (the "Federal Policy").[1] During the course of these proceedings, the circuit court ruled on the demurrer to the amended complaint filed by Federal Insurance and Hogan Lovells. The circuit court sustained that demurrer in part, overruled it in part, and allowed Bartolomucci's suit to continue on the theory that he was covered by the Federal Policy.

The case went to trial. The matter was submitted to the jury on a special interrogatory asking the question whether Bartolomucci was using his vehicle in Hogan Lovells's business or personal affairs at the time of the collision. The jury responded "yes." However, the circuit court then granted Federal Insurance's and Hogan Lovells's motion to strike, and set aside the jury's finding as not being supported by the evidence. The court entered final judgment in favor of Federal Insurance and held that the Federal Policy did not cover Bartolomucci's use of the vehicle at the time of the collision.

Bartolomucci and Vo timely filed separate petitions for appeal with this Court, and we granted all six assignments of error. These assignments require us to address four issues:

---

[1] At the time of the collision, Hogan Lovells US, LLC was Hogan Hartson, LLC. All instances of Hogan Hartson are referred to as Hogan Lovells.

1. Whether the Federal Policy automatically provided excess liability coverage unrestricted by any other requirements of the policy?

2. Whether the Federal Policy provided coverage because Bartolomucci is a "Named Insured"?

3. Whether the Federal Policy provided coverage because it is ambiguous?

4. Whether the Federal Policy provided coverage because Bartolomucci's use of the vehicle fell within the scope of the policy?

## II. Discussion

### A. The Role Of The Jury In A Declaratory Judgment Action

The parties dispute the preliminary issue of whether the jury's answer of "yes" to the special interrogatory was binding or advisory. Throughout the proceedings, the circuit court treated the jury's answer as arising under Code § 8.01-188, and as binding subject to being set aside only in the limited circumstances set forth in Code § 8.01-680. Federal Insurance argues that this was error because no constitutional, statutory, or consent basis allowed the court to employ a binding jury, and therefore the jury's answer was only advisory under Code § 8.01-336(E). See Angstadt v. Atlantic Mut. Ins. Co., 254 Va. 286, 291-92, 492 S.E.2d 118, 120-21 (1997); Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986). This argument impacts our review of the circuit court's treatment of the jury answer. If the jury's answer was binding rather than advisory, the court's setting aside that answer is analyzed

3

under a more stringent standard.  Compare DeJarnette v. Thomas M. Brooks Lumber Co., 199 Va. 18, 21, 97 S.E.2d 750, 752 (1957) (standard of review applicable to the rejection of an advisory determination), with Wooldridge v. Echelon Service Co., 243 Va. 458, 461, 416 S.E.2d 441, 443 (1992) (standard of review applicable to the setting aside of a binding verdict).

We decline to resolve this issue because we need not do so to decide this appeal.  See Woodard v. Commonwealth, 287 Va. 276, 280-81, 754 S.E.2d 309, 312 (2014).  For the reasons set forth in this opinion, the circuit court's action was without error even under the more stringent standard of review.  For purposes of this appeal, we assume without deciding that the jury's answer to the special interrogatory was binding.

B.    The Federal Policy And Final Judgment

1.    Standard Of Review

Because we treat the jury's answer to the special interrogatory as binding rather than advisory, "the jury verdict must be reinstated and judgment entered on the verdict if there is any credible evidence in the record to support the jury verdict."  Wooldridge, 243 Va. at 461, 416 S.E.2d at 443.

To the extent we interpret and apply the terms of an insurance contract, we address those issues of law de novo. Doctors Co. v. Women's Healthcare Assocs., 285 Va. 566, 571, 740 S.E.2d 523, 525 (2013).

4

2. <u>The Federal Policy</u>

The Federal Policy is comprised of two documents: the Business Auto Declarations and the Business Auto Coverage Form. The Business Auto Declarations instrument sets forth the basics of the Federal Policy, such as the Named Insured, endorsements, and a schedule of coverages. The Business Auto Coverage Form instrument sets forth the terms of the policy and resembles a traditional contract. We review these documents "as if their several provisions were in one and the same instrument." <u>Bailey v. Town of Saltville</u>, 279 Va. 627, 633, 691 S.E.2d 491, 493 (2010) (internal quotation marks and citation omitted).

a. <u>The Excess Coverage Provision Does Not Provide An Independent Basis To Establish Excess Coverage</u>

In provision IV.B.5.a., the Business Auto Coverage Form provides: "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." Bartolomucci assigns error to the circuit court's failure to hold that he fell within this language, as in his view the Federal Policy operates as excess insurance for vehicles not owned by Hogan Lovells. Bartolomucci's argument is that the Federal Policy applied to Bartolomucci's vehicle because, in the absence of "business or personal affairs" language in this excess coverage provision, the Federal Policy operates as excess insurance in addition to

Bartolomucci's Allstate Policy independent of any other provision in the Federal Policy and without any need to show that his vehicle was used in Hogan Lovells's business or personal affairs. The circuit court did not err in rejecting this argument.

Bartolomucci argues that the Federal Policy is a "follow form" policy for all vehicles not owned by Hogan Lovells. "The phrase 'follow form' refers to the practice, common in excess policies, of having the second-layer coverage follow substantively the primary layer provided by the main insurer." Insituform Techs., Inc. v. American Home Assur. Co., 566 F.3d 274, 278 (1st Cir. 2009); see also, e.g., Providence Wash. Ins. Co. v. Gheen, 247 Va. 73, 76-77, 439 S.E.2d 333, 334-35 (1994) (addressing a "follow form" provision). However, Bartolomucci ignores the language in the Federal Policy directing excess coverage to apply only to "any covered 'auto' you don't own."

Therefore, this provision applies to a vehicle not owned by Hogan Lovells only if that non-owned vehicle is a "covered auto," as defined by the Federal Policy, instead of applying as excess coverage to non-owned vehicles as a matter of course. This language which the parties' contracted to "cannot simply be ignored." First Am. Title Ins. Co. v. Seaboard Sav. & Loan Ass'n, 227 Va. 379, 386, 315 S.E.2d 842, 846 (1984).

6

The Federal Policy covers non-owned vehicles that fall within the terms of symbol 8, which governs "Hired 'Autos' Only," and symbol 9, which governs "Nonowned 'Autos' Only." These "symbols" are descriptive categories of vehicles listed in the Business Auto Coverage Form. For example, symbol 8 describes vehicles that are "lease[d], hire[d], rent[ed,] or borrow[ed]." And symbol 9 describes vehicles that are "not own[ed], lease[d], hire[d], rent[ed,] or borrow[ed]" but that are nonetheless still used "in connection with" the Named Insured's business or personal affairs. Thus, the circuit court properly decided whether Bartolomucci's vehicle fell within coverage described by those symbols instead of holding that the Federal Policy automatically covered Bartolomucci's vehicle by operation of provision IV.B.5.a.

b.    The Named Insured Was Hogan Lovells

In describing the scope of the Federal Policy's coverage, the Business Auto Coverage Form refers to "you" and "your." For example, under the terms of symbol 9, potential coverage includes "those 'autos' you do not own . . . that are used in connection with your business." Bartolomucci assigns error to the circuit court's holding that these instances of "you" and "your" refer to the law firm Hogan Lovells, rather than to that law firm's partners, such as Bartolomucci himself. The circuit court did not err in its holding.

7

The Business Auto Coverage Form states:  "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations."  The first page of the Business Auto Declarations includes a line reading "NAMED INSURED" that names only Hogan Lovells.  Additional sections of the Business Auto Declarations that identify the Named Insured also name only Hogan Lovells.  Thus, throughout the Federal Policy, the terms "you" and "your" are pronouns operating as a substitute for the stated name of the Named Insured, Hogan Lovells.

Moreover, Hogan Lovells is a limited liability partnership law firm.  "A partnership is an entity distinct from its partners."  Code § 50-73.87; see also Jimenez v. Corr, __ Va. __, __, 764 S.E.2d 115, 122 (2014) (observing that a "legal entity" has a "separate legal status" from its owners, shareholders, agents, or members).  A partner of the Named Insured law firm such as Bartolomucci is not also a Named Insured simply because of his partner status.

Acknowledging this, Bartolomucci argues that he is a Named Insured because of other portions of the Business Auto Coverage Form.  Specifically, in the Definitions section the term "Insured" includes "any person . . . qualifying as an insured in the Who Is An Insured provision of the applicable coverage."  In turn, a portion of the relevant Who Is An Insured provision

8

includes "[a] partner . . . for a covered 'auto' owned by him or her."  Bartolomucci argues that he is therefore an Insured.

Assuming Bartolomucci's argument is correct, however, only means that Bartolomucci is an "Insured" under the policy.[2]  The words "you" and "your" do not refer to the parties who are an "Insured," but only to the "Named Insured [as] shown in the Declarations."  This distinction based upon the word choice utilized in the instrument must be recognized because "all words used in [the written instrument] must be given effect if reasonably possible."  Barrett v. Vaughan & Co., Bankers, 163 Va. 811, 817, 178 S.E. 64, 66 (1935) (internal quotation marks and citations omitted).  Different terms given special meanings by the parties are reasonably understood to mean different things.  Bartolomucci may be an "Insured," but he is not a "Named Insured [as] shown in the Declarations."

c.    Coverage For "Autos . . . While Used In Your Business Or Your Personal Affairs" Is Not Ambiguous

In the Business Auto Declarations, the Federal Policy's $1,000,000 liability coverage extends to "Covered Autos" falling within symbols 8 and 9.  Only symbol 9 is relevant to whether the Federal Policy covered Bartolomucci's vehicle at the time of the collision.  Symbol 9, describing "Nonowned 'Autos' Only," extends coverage, in part, to "'autos' owned by

---

[2] We do not rule on whether a partner of the Named Insured is actually an "Insured" for purposes of the Federal Policy.

your . . . partners . . . but only while used in your business or your personal affairs."  Bartolomucci and Vo assign error to the circuit court's failure to hold that this provision is ambiguous.  If this phrase is ambiguous, then the language must be construed "in favor of coverage and against the insurer." Virginia Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 81, 677 S.E.2d 299, 302 (2009).

"Contract language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time."  Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, 287 Va. 425, 429, 756 S.E.2d 415, 418 (2014) (internal quotation marks and citation omitted).  Contract language is not ambiguous simply because the parties or courts in different jurisdictions disagree about how to understand the language.  Id.; Floyd v. Northern Neck Ins. Co., 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993).  Pursuant to these principles, symbol 9 is not ambiguous and the circuit court did not err.

Bartolomucci and Vo argue that the phrase "your business or your personal affairs" is ambiguous, if "your" refers to Hogan Lovells, because a legal entity cannot have truly "personal" affairs.  See FCC v. AT&T Inc., 562 U.S. 397, __, 131 S. Ct. 1177, 1185 (2011) ("[We] far more readily think of corporations as having 'privileged or confidential' documents than personally private ones.").  We reject this narrow

10

construction of this undefined contract language because it ignores the context in which the language is used.

We give undefined contract terms "their ordinary meaning" in light of "the contract as a whole." Schuiling v. Harris, 286 Va. 187, 193, 747 S.E.2d 833, 836 (2013). The Federal Policy is an insurance contract executed by a legal entity to provide coverage in specific, limited circumstances for its employees and partners. When used in this type of contract, the understanding of the ordinary meaning of "business affairs" refers to a legal entity's income-producing activities, and "personal affairs" refers to a legal entity's non-income-producing activities that benefit the business.

Consequently, symbol 9 is not ambiguous just because it refers to the "personal affairs" of Hogan Lovells, a law firm. In light of this "plain reading of the disputed provision [that] effectuat[es] the intention of the parties," our holding is not altered by the fact that courts in other jurisdictions disagree as to whether this contract language is ambiguous. Floyd, 245 Va. at 158, 427 S.E.2d at 196.

d.   Symbol 9 Does Not Cover Bartolomucci's Vehicle

Symbol 9 reads in its entirety:

[1] Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your

11

> business. [2] This includes "autos" owned by your
> "employees," partners (if you are a partnership),
> members (if you are a limited liability company), or
> members of their households but only while used in
> your business or your personal affairs.

(Bracketed numbers added.) Bartolomucci and Vo assign error to the circuit court's failure to consider the first sentence, Sentence [1], as an independent basis for holding that the Federal Policy covers Bartolomucci's vehicle. Bartolomucci and Vo also assign error to the circuit court's entry of final judgment in favor of Federal Insurance, because some evidence supported the jury's answer that Bartolomucci used his vehicle within the scope of the second sentence, Sentence [2]. The circuit court did not err on either basis.

Sentence [1] applies, generally, to vehicles not owned by Hogan Lovells. But Sentence [2] applies to a specific subset of non-owned vehicles, that is, vehicles that <u>are not owned</u> by Hogan Lovells but that <u>are owned</u> by a Hogan Lovells's employee, partner, member, or members of an employee's, partner's, or member's household. Thus, vehicles governed by Sentence [2]'s specific provision are carved out from the scope of Sentence [1]'s general provision. <u>See</u> <u>Jimenez</u>, __ Va. at __, 764 S.E.2d at 121. Because Bartolomucci was a Hogan Lovells partner and was driving a vehicle he owned, Bartolomucci's vehicle is governed by Sentence [2] rather than Sentence [1].

12

Further, Bartolomucci's use of the vehicle did not satisfy all of the requirements of Sentence [2], which covers non-owned vehicles that are "used in [Hogan Lovells's] business or [Hogan Lovells's] personal affairs."[3]  At the time of the collision, Bartolomucci was using his vehicle to commute from his home to Hogan Lovells's office, which was not a "use[] in" Hogan Lovells's business or personal affairs.  To avoid this conclusion, Bartolomucci and Vo emphasize two aspects of this commute.

First, Bartolomucci and Vo argue that Bartolomucci's home operated as a Hogan Lovells work location because Bartolomucci did not have set work hours, and Bartolomucci was allowed and encouraged to work at his home office where he would engage in Hogan Lovells's business "[q]uite a lot."  Bartolomucci thus contends that he was not commuting from home to work, but was instead traveling between work locations.  Second, Bartolomucci and Vo argue that the trip itself was more than a typical commute to work so that the drive was actually "in" Hogan Lovells's business.  Bartolomucci had a Blackberry electronic device, issued and paid for by Hogan Lovells, turned on and

---

[3] Federal Insurance argues that the phrase "used in your business or your personal affairs" requires a "course of employment" or "scope of employment" test.  But we evaluate contracts based on what the instruments actually say, not on what may have been intended.  Jimenez, __ Va. at __, 764 S.E.2d at 124.  As the instruments before us do not include those phrases, the Federal Policy does not utilize such tests.

within Bartolomucci's physical reach.  Also, although Bartolomucci could not recall what he was thinking at the time of the collision, Bartolomucci testified that he habitually thought about work related issues on his commute to work.

Contrary to these arguments, the facts of this case do not amount to anything more than a typical commute from home to work, which was not covered under the terms of the Federal Policy.  The only work related activity that Bartolomucci accomplished before leaving home was to check his work email and call his office voicemail.  But the record does not indicate that Bartolomucci read or responded to any work related emails, that the voicemail itself was work related, or that Bartolomucci billed his time for these activities.  In addition, beyond the fact that Bartolomucci occasionally worked at home, the record fails to show any relationship between Hogan Lovells and Bartolomucci's home to establish that place as a Hogan Lovells work location.

Moreover, Bartolomucci's use of his vehicle to commute from home to work was not a "use[] in" Hogan Lovells's business or personal affairs.  Bartolomucci did not use his Blackberry during the commute.  Merely having access to modern technology such as a Blackberry, which would allow Bartolomucci to conduct work activity if that device was used, "does not transform" an employee's "private activity into company business."  Le Elder

14

v. Rice, 26 Cal. Rptr. 2d 749, 753 (Cal. Ct. App. 1994).  And merely thinking about work does not make a commute "in" the business, as contemplated by the policy language.  The record does not indicate that Bartolomucci billed for any activity or otherwise performed any work during his commute.  Also, Bartolomucci was not reimbursed by Hogan Lovells for his commute.

In sum, Bartolomucci's use of his vehicle to drive from home to work did not fall within the coverage described in symbol 9.  "When the sufficiency of a plaintiff's evidence is challenged upon a motion to strike the evidence at the conclusion of the plaintiff's case-in-chief, the trial court should in every case overrule the motion where there is any doubt on the question."  Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985).  But based on this record, no evidence supported Bartolomucci's claim that the Federal Policy covered his vehicle at the time of the collision, and it was "conclusively apparent" that Bartolomucci had proven no cause of action against Federal Insurance.  Id.  The circuit court should have granted the motion to strike made at the conclusion of Bartolomucci's case-in-chief.  As the jury finding was contrary to the evidence, the court properly set aside the jury finding and entered final judgment in favor of Federal Insurance.  Code § 8.01-680.

## III. Conclusion

The Federal Policy did not cover Bartolomucci's use of the vehicle at the time of the collision. A morning commute by a law firm partner from home to work does not constitute "use[]" of the partner's vehicle "in" a law firm's business or personal affairs. We affirm the circuit court's entry of final judgment.

Affirmed.